SAMUEL K. TAYLOR *vs.* ARTHUR C. BLANCHARD.

A contract made between citizens of this commonwealth, by which one of them agreed, for a good consideration, never to " set up, exercise or carry on the trade or business of manufac turing and selling shoe-cutters at any place within the Commonwealth of Massachusetts " is illegal, as being in restraint of trade; although the manufacture of shoe-cutters is an art which can only be carried on by persons instructed in the same, and at the time of making the above contract the person so promising was ignorant of said art, and his said promise was made as a part of an agreement of partnership with one who was skilled and actually engaged in carrying on the same, and to take effect at the expiration of the partnership, and although at that time only three other persons were engaged in the business.

CONTRACT upon an agreement in writing entered into between the plaintiff and defendant, providing that they should form a partnership together in the art, trade or business of manufacturing and selling shoe-cutters, and all things thereto belonging, for one year from March 17th 1862, and for such further time as the parties should mutually agree upon. " And the said Blanchard for himself, his heirs, executors, administrators and assigns, further covenants and agrees to and with the said Taylor, his executors, administrators and assigns, that at whatever time the said copartnership shall be determined and ended, he, the said Blanchard, shall not nor will at any time or times hereafter, either alone or jointly with, or as agent for, any person or persons whomsoever set up, exercise or carry on the said trade or

business of manufacturing and selling shoe-cutters, at any place within the aforesaid commonwealth of Massachusetts, and shall not nor will set up, make or encourage any opposition to the said trade or business hereafter to be carried on by the said Taylor, his heirs, executors, administrators or assigns, nor do any act, matter or thing to the prejudice thereof, and shall not nor will divulge or make known to any person or persons whomsoever, any of the secrets, accounts or transactions of, or relating to, the said copartnership so heretofore carried on between them, the said Taylor and Blanchard, as aforesaid." And the sum of $1000 was fixed upon as liquidated damages, in case of a violation of the above agreement.

At the trial in the superior court, before *Vose*, J., it appeared that at the date of the above agreement the plaintiff was and had for several years been engaged in the manufacture and sale of shoe-cutters, at Marlboro, Massachusetts. The manufacture of said articles was then and now is an art, and can only be carried on by persons instructed in the same, and the business was then confined to the plaintiff and three other parties; one in Sturbridge, one in Worcester, and one in Stoneham. The plaintiff at that time was doing a large and profitable business in said manufacture and sale. The defendant was wholly ignorant of the business. On the 17th day of March 1862 the plain-tiff received the defendant into partnership under the agreement, which partnership was continued until February 7th 1865, when it was dissolved by mutual consent. During this time, the defendant became well acquainted with the business and its customers. Upon the dissolution, the plaintiff took the business of the firm, and still continues it at Marlboro and Boston. Before he commencement of this action, the defendant, without the plaintiff's consent, set up the same business in Boston, with a new partner, and traded with and supplied the customers of the plaintiff.

Upon these facts, the judge directed the jury to return a verdict for the defendant, which was accordingly done; and the plaintiff alleged exceptions.

*T. H. Sweetser & J. B. Goodrich*, for the plaintiff. This

contract is not in general restraint of trade, within the meaning of the law.   The test of the reasonableness of any restriction of trade is whether it is such as only affords a fair protection to the party in whose favor it is made, and at the same time does not militate against the public interest.   Judged by this test, the restriction in this case was a reasonable one.   *Bunn* v. *Guy*, 4 East, 190.   *Hayward* v. *Young*, 2 Chit. R. 407.   *Mallan* v. *May*, 11 M. & W. 653.   *Pierce* v. *Woodward*, 6 Pick. 206.   *Duffy* v. *Shockey*, 11 Indiana, 70.   The nature of the business is such that even a total restriction would be valid.   *Bryson* v. *Whitehead*, 1 Sim. & Stu. 74.   *Vickery* v. *Welch*, 19 Pick. 523.   *Jarvis* v. *Peck*, 10 Paige, 118.   *Jones* v. *Lees*, 1 Hurlst. & Norm. 189.

*C. R. Train & S. A. Bent*, for the defendant, besides some of the cases cited in the opinion, cited *Smith* v. *Dickenson*, 3 B. & P. 630 ; *Hitchcock* v. *Coker*, 6 Ad. & El. 454 ; *Ward* v. *Byrne*, 5 M. & W. 548 ; *Homer* v. *Graves*, 7 Bing. 743 ; *Tallis* v. *Tallis*, 1 El. & Bl. 391 ; *Young* v. *Timmins*, 1 Cr. & Jerv. 331 ; *Lange* v. *Werk*, 2 Ohio State R. 519 ; *Nobles* v. *Bates*, 7 Cow. 307 ; *Chappel* v. *Brockway*, 21 Wend. 157 ; *Ross* v. *Sadgbeer*, Ib. 166, 168 ; *Butler* v. *Burleson*, 16 Verm. 176.

CHAPMAN, J.   The question presented in this case is, whether a contract made between citizens of this state, upon good consideration, by which one of them agrees " not to set up, exercise or carry on the trade or business of manufacturing shoe-cutters within the Commonwealth of Massachusetts," is valid, or is to be regarded as void on the ground that it is contrary to the policy of the law.

The law has always regarded monopolies as hostile to the rights and interests of the public.   One method of obtaining them in early times was by a grant from the sovereign to a particular individual of the sole right to exercise a particular trade. The mischief arising from these monopolies became so intolerable that the practice was suppressed by a clause in *Magna Charta*.   This clause does not, however, apply to grants for the sole use of a new invention for a limited period.   These grants it is said, are indulged for the encouragement of ingenuity Patent-right and copyright laws rest on this ground.

Another method by which monopolies were sought to be obtained was by private contracts, in which one of the parties agreed not to engage in some specified trade or business. In *Mitchel* v. *Reynolds*, 1 P. W. 181, which is usually cited as the leading case on this subject, corporations are specially mentioned as perpetually laboring for exclusive advantages in trade, and to reduce it into as few hands as possible. It was held in that case that a contract not to use a particular trade within the kingdom was void, on the ground that " it can never be useful to any man to restrain another from trading in all places, though it may be to restrain him from trading in some places, unless he intends a monopoly which is a crime." In subsequent cases the subject has been much discussed in the English courts. It is said that all restraints are presumed to be bad; but if the circumstances are set forth, that presumption may be excluded; and the court are to judge of these circumstances, whether the contract be valid or not. The law, it is said, protects trade for the sake of the public, and not for the sake of the parties engaged in it. It is regarded as beneficial to the public that contracts for the partial restraint of trade should be upheld to a reasonable extent. A territory including the whole city of London, and several miles beyond, has been considered as reasonable; but it is not necessary that the restraint should extend to the whole kingdom to be void. Contracts for the exclusive use of a secret art are not within the principle, for the public has no right to the secret. Nor does it extend to a sale of the exclusive use of a trade protected by a patent. Some of the recent cases in which this subject has been discussed, and the earlier cases cited, are *Mallan* v. *May*, 11 M. & W. 653 ; *Price* v. *Green*, 16 M. & W. 346 ; and *Nicholls* v. *Stretton*, 10 Q. B. 346.

This court has adopted the English doctrines, so far as it has had occasion to consider them. In *Alger* v. *Thacher*, 19 Pick. 51, it was held that a bond conditioned that the obligor shall never carry on or be engaged in the business of founding iron is void. But the restriction in that case was not limited to the Commonwealth. In that respect it differs from the present case.

On the other hand, it has been held that an agreement not to carry on a trade within a particular town or city is valid, and that such a restriction may extend to the whole of a particular stage route extending from Boston to Providence, or the navigation of the whole length of Connecticut River. *Pierce* v. *Fuller*, 8 Mass. 223. *Palmer* v. *Stebbins*, 3 Pick. 188. *Pierce* v. *Woodward*, 6 Pick. 206. *Gilman* v. *Dwight*, 13 Gray, 356. It is also held that one may lawfully sell the right to carry on a secret trade, and bind himself not to carry it on nor to divulge the secret. *Vickery* v. *Welch*, 19 Pick. 523. So of the use of a machine protected by a patent. *Stearns* v. *Barrett*, 1 Pick. 443. So of a business which is carried on out of the country. *Perkins* v. *Lyman*, 9 Mass. 522. In several of the states, contracts for the partial and limited restraint of trade have been upheld. In New York, it is held by the court of appeals that a restraint extending throughout the state is void. *Dunlop* v. *Gregory*, 6 Selden, 241. And the supreme court has held that a restraint extending through all the territory west of Albany is void. *Lawrence* v. *Kidder*, 10 Barb. 641.

The plaintiff contends that the trade in the present case was secret. But we cannot so regard it; for although it was not generally known to the public, it was carried on in three different towns in the Commonwealth, by three different parties, who had no connection in business with the parties to this contract.

The plaintiff further contends that in this country a restraint ought not to be held void unless it extends throughout the United States, because they are one country in respect to trade and business, and the power to grant patents and copyrights and to regulate trade is vested in the United States government. But we cannot regard this view as just. A monopoly extending throughout the state may be as really injurious to the people of the state as if it extended throughout the whole country. Whether the principle extends to a case where, by means of travelling agents, one has extended his business through a large part of the country, or a large part of the state, and sells the good will of his business with a restriction merely co-extensive

with that good will, and not extending beyond the actual sphere of the business of the vendor, we need not discuss. The law regards the good will of a particular trade as property having a market value, and protects it to a reasonable extent, depending somewhat upon the nature and character of the business.

The plaintiff also contends that the restriction in this case is reasonable, because the territory of Massachusetts is comparatively small, and the business is the manufacture of an article which is used only by manufacturers of shoes. But we do not think the extent of territory embraced in a state affects the principle. Whatever may be the extent of the state, the monopoly restricts the citizen from pursuing his business, unless he transfers his residence and his allegiance to some other state or country. Its tendency is to drive business and citizens who are skilled in business from this to other states. If one is not at liberty to carry on his business here, but is at liberty to do so elsewhere, he will be likely to go elsewhere, and employ others to go with him.

The disposition to obtain monopolies which formerly prevailed is by no means extinct at the present day, nor is it confined to corporations. Combinations of men in business sometimes accomplish such an object, and they often succeed in obtaining exorbitant profits from the public.

In the present contract the court can see nothing beneficial to the public, and are of opinion that it is contrary to the well established policy of the law, and void.

*Exceptions overruled.*